**MORAN TOWING & TRANSPORTATION CO., Inc., as Assignee of Time, Inc., Owner of BARGE C. L. STILLMAN, Libelant,**

v.

**CONNERS–STANDARD MARINE CORPORATION, Respondent.**

Ad. 192–349.

United States District Court
S. D. New York.

Jan. 17, 1963.

Burlingham, Underwood, Barron, Wright & White, New York City, proc-

tors for libelant, Eugene Underwood, and E. Lisk Wyckoff, Jr., New York City, of counsel.

Purdy, Lamb & Catoggio, New York City, proctors for respondents, Vincent A. Catoggio, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This suit in admiralty was tried before Judge Murphy who found respondent Conners-Standard Marine Corporation (Conners), as owner of the tug Gramercy, solely at fault for damages sustained to the Barge Stillman, owned by Time, Inc., the assignor of libelant Moran Towing & Transportation Co., Inc. (Moran) by reason of the grounding of the Stillman in the Erie Canal on June 6, 1956. See 189 F.Supp. 955 (S.D. N.Y.1960). An interlocutory decree was entered on March 2, 1960 adjudging that Moran, as assignee of Time, Inc., recover from Conners the damages sustained by the barge, together with interest and costs. The decree was affirmed on appeal and rehearing denied. See 285 F.2d 368 (2 Cir. 1960).

The decree referred the matter to a Special Commissioner to ascertain and compute the amount of such damages and to report thereon to the court. The substituted Special Commissioner filed his report finding that the damages suffered amounted to $32,794.60 and recommending that a final decree be entered in favor of Moran in that sum with interest on various portions of the amount from several dates in 1956 and 1957 when the respective bills for surveys and repairs were paid.

Respondent Conners now brings on for hearing, pursuant to Supreme Court Admiralty Rule 43½ and Admiralty Rule 25(d) of this court, exceptions to the report of the Special Commissioner.

In essence the exceptions are to the effect that the Special Commissioner erred because: (1) he failed to admit proof offered by Conners concerning the transaction by which the claim of Time, Inc. was assigned to Conners; (2) Moran is barred from recovering damages on this claim because the assignment is in violation of § 275 of the New York Penal Law, McKinney's Consol.Laws, c. 40 and therefore contrary to the public policy of the State; and (3) in any event Moran is entitled to recover only the sum which it paid its assignor, Time, Inc., for the assignment, and is not entitled to interest beyond the date of that payment.

While Conners' exceptions do not so state, Conners also now contends that Moran may not recover damages because this court lacks jurisdiction over the subject matter of the suit. This is on the theory that since the suit is brought by an assignee, it is a suit for equitable relief to enforce the assignment and admiralty has no jurisdiction over it.

The history and background of this litigation are somewhat involved. On June 6, 1956 the Time, Inc., barge Stillman suffered serious damage to her bottom when she went aground in the Mohawk River section of the Erie Canal. The Stillman was being pushed by the Moran tug Harriet Moran and was forced out of the channel and went aground because of what was ultimately found to be the fault of the Conners tug Gramercy which was proceeding with a tow in the opposite direction.

On September 11, 1957, Time, Inc., assigned to Moran its claim against Conners for damage to the Stillman in consideration for the payment of $31,996 which represented the bulk of the cost of repairs to the barge by reason of her grounding and certain surveys made in that connection.

On November 14, 1957 Moran, as assignee of Time, Inc., instituted suit for damages on the claim in this court. As has been noted, on the trial the respondent Conners was found solely at fault, the interlocutory decree adjudged that Moran should recover from Conners the damages sustained by Time, Inc., its assignor, to the Stillman and this decree was affirmed by the Court of Appeals.

No questions as to the jurisdiction of the court or the validity of the assign-

ment were raised by respondent Conners at the trial or on the appeal from the interlocutory decree to the Court of Appeals, though the libel, filed some five years ago, shows on its face that Moran was suing as assignee and respondent's interrogatories over four years ago sought details regarding the assignment. The assignment was introduced at the trial before Judge Murphy without objection from Conners.

Subsequent to the affirmance by the Court of Appeals of the interlocutory decree establishing liability, Conners for the first time raised the contention that Moran was not entitled to enforce its claim because the assignment was champertous under § 275 of the New York Penal Law and that suit brought upon it was barred since it was in violation of the public policy of the State of New York. This contention was raised in an action brought by Conners against Moran in the Supreme Court, New York County, to restrain Moran from further 'prosecution of the suit in this court on that ground. A motion to dismiss the State Court action was granted by Special Term on April 3, 1961 and the Appellate Division, First Department, unanimously affirmed. (14 A.D.2d 679, 219 N.Y.S.2d 946 (1961)). In the meantime proceedings before the Commissioner for assessment of damages had been stayed by this court pending determination of the appeal to the Appellate Division.

After the New York action had been finally decided against Conners, it moved before Judge MacMahon of this court for leave to amend its answer to the libel so as to assert the illegality of the assignment on the ground that it was champertous under the New York Penal Law, to take libelant's deposition and to place the suit on the admiralty trial calendar. On December 28, 1961 Judge MacMahon denied Conners' motion in the exercise of his discretion, holding that Conners had slumbered on its rights and was guilty of laches.

The hearing before the Special Commissioner on the question of damages then proceeded. Moran put in its case on damages. Conners offered no proof on that subject. However, despite Judge MacMahon's ruling, Conners sought to introduce evidence before the Special Commissioner on the question of the alleged illegality of the assignment as champertous under the New York Penal Law. This testimony was excluded by the Commissioner upon the ground that the scope of the reference directed by the interlocutory decree was confined to damages and that such evidence was not relevant on that question.

The exceptions to the Commissioner's report are based, in substance, on his exclusion of this evidence and his failure to find that Moran was not entitled to damages because of the illegality and champertous nature of the assignment.

The question of the subject matter jurisdiction of the admiralty court to entertain a suit based on the assignment, as far as I am able to ascertain from the record, has been raised before me for the first time at this hearing on exceptions. I will first dispose of that question.

 In a suit in admiralty the issue of jurisdiction over the subject matter is always deemed present. Desmond v. United States, 105 F.Supp. 9 (S.D.N.Y. 1952), reversed in part on other grounds 217 F.2d 948 (2 Cir. 1954), cert. den. 349 U.S. 911, 75 S.Ct. 600, 99 L.Ed. 1246 (1955); His Majesty's Government for United Kingdom of Great Britain v. The Flying Arrow, 97 F.Supp. 182 (S.D.N.Y.1951). Accordingly that question must be considered by the court even if it is first raised by way of exception to a commissioner's report. Ira S. Bushey & Sons, Inc. v. The Ocean Spray, 160 F.Supp. 815 (E.D.N.Y.1957).

██ Respondent's attack upon jurisdiction here is based upon the theory that this is a suit to enforce an assignment, that the nature of the relief in suits of this nature is equitable, and that therefore there is no jurisdiction in admiralty over the subject matter of the suit. While this may well be the ancient rule (see discussion in 2 Benedict on

Admiralty § 245 (A. W. Knauth, 6th ed. 1940) and cases there cited), it plainly is no longer the law. Ozanic v. United States, 188 F.2d 228 (2 Cir. 1951); The Mandu, 102 F.2d 459 (2 Cir. 1939). See also Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co., 194 F. Supp. 396 (S.D.N.Y.1961); Republic of Turkey v. Zadeh, 112 F.Supp. 933 (S.D. N.Y.1953); and 2 Benedict on Admiralty § 245, supra. There is no substance to respondent's contention as to jurisdiction and it is overruled.

I turn then to the question of the alleged illegality of the assignment and the Commissioner's exclusion of evidence claimed to bear on that question. Conners' theory is the following:

Since Moran is a New York corporation it is governed by § 275 of the New York Penal Law directed against champertous agreements and suits. The assignment from Time, Inc. to Moran for its claim for damages was in violation of § 275 and thus contrary to the public policy of the State. Moran was therefore under a legal disability to prosecute this suit or to recover damages as the assignee of Time and this court should refuse to grant Moran relief.

It is true that an agreement made in violation of § 275 is void and unenforceable. Frank H. Zindle, Inc. v. Friedman's Express, Inc., 258 App.Div. 636, 17 N.Y.S.2d 594, (App.Div., 1st Dept. 1940), and cases there cited. But the question of whether the assignment in the case at bar is void and unenforceable, as Conners claimed, goes to the issue of Moran's right to recover rather than to the extent of the damages suffered. See Empire Management Corporation v. Russo, 81 N.Y.S.2d 817 (Sup. Ct., New York County, 1948).

■ As has been pointed out, though Conners was fully aware of the assignment, it never raised this question either on the trial on the question of liability, or on the appeal upon which the interlocutory decree was affirmed. There is nothing in the way of new facts or newly discovered evidence shown here.

The question of liability has been determined against Conners and Conners is foreclosed from raising questions of liability now.

■ The question which Conners now raises was plainly not within the scope of Judge Murphy's order of reference on the question of damages only and the Commissioner had no power to consider it. Petition of New Jersey Barging Corporation, 168 F.Supp. 925 (S.D.N.Y. 1958). Indeed, it is very doubtful whether the court would have had power to send such a question to a Commissioner without the consent of the parties. See United States v. Kirkpatrick, 186 F.2d 393 (3rd Cir. 1951).

■ Moreover, subsequent to the affirmance of the interlocutory decree by the Court of Appeals, Judge MacMahon, in the exercise of his discretion, refused to permit Conners to amend its answer so as to raise this question on the ground that Conners had slumbered on its rights and was guilty of laches. Judge MacMahon's conclusion was eminently sound and should not be disturbed.

Even had the issue not been excluded from the Commissioner's consideration by the terms of the order of reference, in view of Judge MacMahon's denial of permission to raise the issue in an amended pleading, the Commissioner could scarcely have permitted it to be interjected into the limited subject matter before him. The Commissioner very properly excluded the proof proffered before him by Conners on this issue since such evidence was inadmissible before him on any theory. See Supreme Court Admiralty Rule 46B.

■ However, even if it be assumed that Conners could properly raise the question of alleged illegality under the New York Penal Law at this time and in this manner, there is no substance to the contention. The purpose of § 275 is to prevent champertous agreements and the unauthorized practice of law by corporations. Famous Artists Schools, Inc. v. Cook, 121 N.Y.S.2d 457 (Mun.Ct., Manhattan, 1953). See also Transbel

Inv. Co., Inc. v. Roth, 36 F.Supp. 396 (S.D.N.Y.1940). There is no remote indication here that Moran was engaging in champertous conduct or the unauthorized practice of law. Its tug was pushing the Stillman at the time of the grounding and it was directly concerned in the transaction which gave rise to the suit. In the light of the interpretation given to the statute by the New York cases, there is nothing which would bring the transaction between Moran and its assignee, Time, Inc., within the proscription of the statute. See Commission for Polish Relief, Ltd. v. Banca Nationala A Romaniei, 176 Misc. 1064, 27 N.Y.S. 2d 377 (Sup.Ct., Kings, 1941); Pan-American Securities Corporation v. Fried, Krupp Aktiengesellschaft, 169 Misc. 455, 6 N.Y.S.2d 993 (Sup.Ct., Kings, 1938), aff'd 256 App.Div. 955, 10 N.Y.S.2d 205 (App.Div., 2nd Dept., 1939). Cf. The President Arthur, 25 F.2d 999 (S.D.N.Y.1928). See also the memorandum of Justice Amsterdam on dismissal of the Conners complaint in its State Court action against Moran affirmed by the Appellate Division (supra).

The respondent's exceptions based on the exclusion of proffered testimony by the referee on the question of the illegality of the assignment and on the ground that Moran is barred from recovering damages because the assignment is in violation of the New York Penal Law are overruled.

■ Finally, Conners excepts to the Commissioner's finding (a) that Moran is entitled to the full damages sustained by Time, Inc. rather than being limited to the amount paid by it to Time, Inc. for the assignment, and (b) that Moran is entitled to interest from the time that the costs of the repairs and surveys was paid by Time, Inc. Such findings were entirely proper and correct under the terms of the order of reference and are fully supported by the uncontradicted evidence. No good reason has been advanced for disturbing the Commissioner's findings and recommendations in these regards. These exceptions are likewise overruled.

All exceptions having been overruled the Commissioner's report will be in all respects confirmed and a decree will be entered accordingly.

Settle decree on notice.